UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOSEPH P. BICHSEL, | ) | |
| Plaintiff; | ) | Civil No. 03-CV-0288 (WWE) |
| vs. | ) | |
| JILLIAN WONG and ALEX WONG, | ) | |
| Defendants. | ) | |

<u>Plaintiff's Response to Motion in Limine Re: Choice of Law</u>

If the Court were to apply New York law, plaintiff would be deprived of any recompense for the first $50,000 of his economic losses. Plaintiff never made any claim for "basic economic loss"-- medical expense reimbursement and limited wage loss up to $50,000 payable as first party benefits irrespective of fault, N. Y. Ins. Law, §§ 5102, 5103, 5104(c), and the deadline for doing so has long-since passed.

If the Court were to apply New York law, plaintiff could also, at least in theory, be denied recovery for *all noneconomic loss* (pain and suffering) unless the jury were to find that he suffered "serious" injury as that threshold is statutorily defined.' Plaintiff

---

' A "serious" injury under New York Insurance Law Section 5102(d) includes any of the following:

(vi) permanent loss of use of a body organ, member, function or system;

(vii) permanent consequential limitation of use of a body organ or member;

(viii) significant limitation of use of a body function or system;

(ix) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.

believes that he can in fact clearly meet this threshold requirement of a "serious" injury. [2] But he should not be required to do so as an "all or nothing" precondition to recovery of any general damages in a Connecticut court. Plaintiff should not have to jump through this hoop to obtain, simply, a fair and reasonable measure of compensation for his pain and suffering as determined by the jury.

New York has "no dog in this hunt." New York has no cognizable interest in the remedial aspect of this private dispute. The application of New York law to the specific and unique facts of this case would contravene fundamental Connecticut policies of civil justice, and would not achieve *any* of the stated policy objectives of New York's Comprehensive Automobile Insurance Reparations Act, *his. L.* Article 51, §§ 5101, *et* seq.  Connecticut law (the same as Virgin Islands law) should apply.

<u>Connecticut Choice of Law Principles (Tort)</u>

Defendants correctly point out that a federal court sitting in diversity looks to the conflicts jurisprudence of the forum in making choice of law determinations. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 494 (1941); *Curley v. AMR Corp.,* 153 F. 3d 5, 12 (2d Cir. 1998).   Defendants also acknowledge that Connecticut no longer mechanistically adheres to the rule of *"lax loci delicti"* in deciding choice of law questions, but instead adopts the multifactorial approach of the *Restatement (Second) of Conflicts,* first adopted in *O'Connor v. O'Connor,* 201 Conn. 632, 648, 519 A.2d 13 (1986).

---

[2] Plaintiff claims multiple disc injuries (among other orthopedic problems).   Their age and etiology are disputed.   However, even defendants' IME physician admits that plaintiff is *permanently restricted* from heavy construction work activity. *Hines v. Swift Transportation Co.,* 291 A.D.2d 480, 738 N.Y.S.2d 365 (2nd Dept.2002) ("disc herniation may constitute a 'serious injury' within the meaning of the Insurance Law"); *Greco v. Jackson,* 287 A.D.2d 539, 731 N.Y.S.2d 481 (2nd Dept.2001) (bulging disc may constitute "serious injury"); *Moodie v. Shadrach,* 2002 WL 859737 (Sup.Ct.App. 2002) (bulging disc and positive leg raising test).

*O'Connor* is a seminal case. There, two Connecticut residents, traveling in Quebec, Canada, were involved in a single-vehicle accident, the plaintiff-passenger suffering significant injuries. Provincial law barred any judicial remedy at all, offering only a workers compensation-like, no-fault compensation scheme. Connecticut's then-applicable no-fault automobile statute afforded victims a more generous tort remedy. 201 Conn. at 634-635. The trial court had held that Quebec law, the *situs of* the injury, governed the case. The Connecticut Appellate Court agreed.

The Connecticut Supreme Court reversed, and in the process departed from the very long-established, basic common law rule that the place *of* the tort independently determined the applicable law. The Supreme Court, at the outset, cautioned that it "should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require[] it." 201 Conn. at 639, *quoting Herald Publishing Co. v. Bill,* 142 Conn. 53, 62, 111 A.2d 4 (1955). Yet "[p]rinciples *of* law which serve one generation well may, by reason *of* changing conditions, disserve a later one," and "[e]xperience can and often does demonstrate that a rule, once believed sound, needs modification to serve justice better." *O'Connor,* 201 Conn. at 639, *quoting Herald Publishing Co.,* 142 Conn. at 62.

The Court then criticized the inflexible *"lex loci"* rule as based upon antiquated, metaphysical, "vested rights" concepts bereft *of* any ultimate justifying rationale.

> The theoretical barrenness *of* the vested rights doctrine, from which the rule *of lex loci delicti* derives, is but one *of* the many reasons that a majority *of* state courts have rejected the rule of *lex loci,* and that legal scholars have virtually unanimously urged its abandonment.

*O'Connor,* 201 Conn. at 641-642; *footnote omitted.* The old rule did not satisfactorily "solve the complex problems which arise in modern litigation and ... often yield[ed]

harsh, unnecessary and unjust results." *Id., quoting Griffith v. United Air Lines, Inc., 416*

Pa. 1, 13, 203 A.2d *796 (1964).*

<u>Adoption of Restatement Analysis</u>

The Court in *O'Connor* joined many other jurisdictions in replacing *lex loci*

*delicti* with the *Restatement (Second) of Conflicts,* Sections *6* and *145.*

> A majority of the courts that have abandoned *lex loci* have
> adopted the principles of the Restatement Second as
> representing the most comprehensive and equitably
> balanced approach to conflict of laws. It is therefore our
> conclusion that we too should incorporate the guidelines of
> the Restatement as the governing principles for those cases
> in which application of the doctrine of *lex loci* would
> produce an arbitrary, irrational result.

*O'Connor,* 201 Conn. at *649-650; footnote omitted.*

The general rule is this: "The rights and liabilities of the parties with respect to an

issue are determined by the local law of the state which, with respect to that issue, has the

most significant relationship to the occurrence and the parties under the principles stated

in § *6."* Rest. 2d, *Conflicts § 145(1); O'Connor,* 201 Conn. at *649-650.*

Under Section *6,* the following factors are to be considered:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the
> relative interests of those states in the determination of the
> particular issue,
>
> (d) the protections of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to
> be applied.

The *O'Connor* Court said, with respect to factor (a) of Section *6,* relating to

considerations of comity, that "[w]e are not today concerned with a case that offends

4

systemic policy concerns of another state or country.... " *Id.* at 651.    That observation applies here, with equal force. Further, in the accidental injury setting in general, the justified expectations of the parties (factor (d)) are not usually of controlling significance, since in a personal injury accident parties "usually act without giving thought to the law that may be applied to determine the legal consequences of this conduct."    Rest. 2d, *Conflicts §* 145, *comment b.*   That certainly applies here, where no forethought went into this accident.   For substantially the same reasons, the goal of factor (f), "certainty, predictability and uniformity of result," is less controlling in an unintentional tort matter. *Id.*

Factor (g), ease in application of law, is similarly not a critical factor in this case. But t is not irrelevant.   The Court in this case might legitimately question what worthwhile objectives would be accomplished by injecting the procedural complexities of New York no-fault law into the trial of this very straightforward negligence case.

The Court in  *O'Connor*  concluded that the key Restatement factors in the facts before it, presenting, as here, an unintentional tort/accidental injury choice of law problem, were (b) the policies of the forum; (c) the relevant policies of the competing state and its interests in the application of its laws to the present controversy; and (e) the basic policies of the underlying field of law.    201 Conn. at 651. Those factors should dominate the present analysis as well.

Under subsection 2 of Section 145, the court is also to consider the following in applying the guiding principles of Section 6:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury
> occurred,

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

However (and very importantly, in the present case), "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue."    Rest. 2d, *Conflicts §* 145.        of the *"number"* of factors militating one way or another, but rather the *"significance"* of the individual factors in the context of the *"particular issue"* presented. *O'Connor,* 201 Conn. at 652-653. It is quality, not quantity.

<u>Application of Restatement Factors to Present Case</u>

The *O'Connor* Court acknowledged the general provision of Section 146 of the Restatement, which provides, in effect, that *"lex loci"* has presumptive residual force, and that law of the place of the accident and injury will still generally govern unless the considerations of Section 6 dictate a contrary result.    201 Conn. at 652-653. In *O'Connor,* they *did* dictate a contrary result, and Connecticut law was deemed to apply. That same result should obtain in the present case.

<u>Relevant Policies of Connecticut</u>

Article first, Section 10 (formerly Section 12) of the Connecticut Constitution of 1818 (as amended) provides for a fundamental right of civil redress in the court system: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." *Id.*   This right, as to cognizable causes of action,  must "remain inviolate." *Gentile v. Altermatt,* 169 Conn. 267, 284, 363 A.2d 1 (1975).

Connecticut's policy of achieving full civil redress in automobile negligence cases is further manifest by this State's repeal of its own no-fault statute, C.G.S.A. § 38-323. Moreover, Connecticut appears to have no relevant liability-limiting provisions of law shielding a negligent driver from the consequences of his or her acts. Connecticut in fact sets a more expansive scope on such tort liability than many jurisdictions. Connecticut, for example, observes the "family car doctrine." E.g., *Cook v. Nye,* 9 Conn. App. 221, 225, 518 A.2d 77 (App. 1976). Connecticut statutorily presumes that any operator of a motor vehicle is acting as the agent of the registered owner, thus imposing broad vicarious liability upon the owner. C.G.S. § 52-183, *Matthiessen v. Vanech,* 266 Conn. 822, 840-841, 836 A.2d 394 (Conn. 2003). Connecticut even imposes statutory vicarious lessor-lessee liability. C.G.S. §14-154a; *Matthiessen,* 266 Conn. at 843. The common thread among these is a principle of full financial accountability for the consequences of negligent operation of motor vehicles. That is Connecticut's clear policy.

Plaintiff is not a citizen of Connecticut. He was at all material times a citizen of the U. S. Virgin Islands (only very recently relocating to Oregon). The Virgin Islands, a U. S. Territory, is a common law jurisdiction. [3]  It does not have a no-fault automobile statute.   Its  personal injury damage laws are in all material respects the same as Connecticut's. [4]

Connecticut's  general   policy of full redress, plaintiff submits,   must be administered in nondiscriminatory fashion, and in a manner consistent with the Privileges

---

[3] "The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary." I V.I.C. § 4.

[4]  The *Restatement (Second) of Torts, §§ 901, et seq.,* affords negligence v ctims the full range of compensation for both pecuniary and nonpecuniary loss, the same as Connecticut.

and Immunities Clause. Art. IV, Section 2 of the U. S. Const. ("''The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."); e.g.; *Saenz v. Roe,* 526 U.S. 489, 502, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999).    This Court, sitting in diversity, has a special institutional role in this regard: To assure that plaintiff is treated without arbitrary discrimination, in the forum state, based upon his citizenship.  That indeed is the very purpose of federal diversity jurisdiction.  Art. III, § 1, U. S. Const.; 28 U.S.C. § 1332;  *Aerojet-General Corp. v. Askew,* 511 F. 2d 710, 716, n. 6 (5ᵗʰ Cir. 1975), *citing Guaranty Trust Co. of New York v. York,* 326 U.S. 99, at 111, 65 S.Ct. 1464, at 1471, 89 L.Ed. 2079 (1945); *Erie R. Co. v. Tompkins,* 304 U.S. 64, at 74, 58 S.Ct. 817, at 820, 82 L.Ed. 1188 (1938); *Martin v. Hunter's Lessee,* 14 U.S. (1 Wheat.) 304, 347,4 L.Ed. 97,108 (1816).

The State of Connecticut, and this  Court,  thus have an interes       assuring that plaintiff receives full and fair civil redress for his injuries, in the same manner and to the same extent as a Connecticut citizen similarly situated.

<u>New York: Substantive Policy Objectives, Lack of Interest in Remedy</u>

<u>Substance-Remedy Dichotomy</u>

New York unquestionably has a very strong interest in enforcing its "rules of the road." It has a compelling interest in enforcing its *substantive* law.  Specifically, New York has a clear and substantial interest in deterring negligent driving in a highway construction zone, such as the one in which the accident here in question occurred .[5]

---

[5] New York's interest in enforcing its traffic safety laws would obviously not be jeopardized in this case by imposing Connecticut's full tort liability.

However, New York's interest in plaintiffs *remedy* for the violation of those substantive rules by defendant Jillian Wong, given that all parties are nonresidents and that this litigation is taking place outside its borders, is an entirely different question.

The Connecticut Supreme Court in *O'Connor* cited the California case of *Reich v. Purcell,* 67 Cal.2d 551, 432 P.2d 727, 63 Cal.Rptr. 31 (1967), several times. In *Reich,* an Ohio man was killed by the negligent driving of a Californian in a Missouri accident. Missouri had a $25,000 wrongful death damage cap. The decedent's estate sued in California. The defendant, of course, argued that he should be protected by the Missouri limitation on damages. The California Supreme Court held otherwise.

The late Chief Justice Traynor drew a sharp distinction between the tort-silos state's interest in enforcing its substantive laws versus that state's interest in applying its civil remedies, in cases involving nonresidents:

> Missouri is concerned with conduct within her borders and as to such conduct she has the predominant interest of the states involved. Limitations of damages for wrongful death, however, have little or nothing to do with conduct. They are concerned not with how people should behave but with how survivors should be compensated. The state of the place of the wrong has little or no interest in such compensation when none of the parties reside there.

> [q] Missouri's limitation on damages expresses an additional concern for defendants ... in that it operates to avoid the imposition of excessive financial burdens on them. That concern is also primarily local and we fail to perceive any substantial interest Missouri might have in extending the benefits of its limitation of damages to travelers from states having no similar limitation. Defendant's liability should not be limited when no party to the action is from a state limiting liability and when defendant, therefore, would have secured insurance, if any, without any such limit in mind.

9

432 P.2d at 730-731; partially quoted in *O'Connor,* 201 Conn. at 655. *Accord: Simaitis v. Flood,* 182 Conn. 24, 33, 437 A.2d 828 (1980) (Tennessee single-car auto accident involving two Connecticut coworkers; passenger's negligence suit against driver would have been barred in Tennessee by local workers compensation exclusive remedy statute; *held:* Tennessee had no interest in the remedial aspect; Connecticut law applied).

Relevant New York Remedial Policies

The New York no-fault automobile law, in stark contrast to the Missouri wrongful death damage cap in *Reich,* is not intended to protect tort defendants. *Johnson v. Hartford Insurance Co.,* 418 N.Y.S.2d 1009, 112 (1979) (no-fault law is to be "employed as a sword to guarantee immediate benefits for the injured, not as a shield to minimize an insurer's potential damages").

One objective of the New York Legislature in enacting Comprehensive Automobile Insurance Reparations Act was to lessen the burden on the courts and more appropriately allocate limited judicial resources. *Matter of Simmons v. GEICO,* 59 A.D.2d 468, 471-472, 400 N.Y.S.2d 99 (A.D. 1977). The goal of the no-fault scheme is to "significantly reduce the number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault premium." *Licari v. Elliott,* 57 N.Y.2d 230, 236-237, 455 N.Y.S. 2d 570, 441 N.E.2d 1088 (CANY 1982), *quoting Memorandum of State Executive Dept.,* 1977 McKinney's Session Laws of N.Y., p. 2448.).

The other objective is the prompt and uncomplicated payment of "basic economic loss" benefits to the victim. *Presbyterian Hosp. in the City of New York,* 90 N.Y.2d at 283-284, 660 N.Y.S.2d 536, 683 N.E.2d 1 (App. 1997).

> [T]he   primary legislative purpose underlying
> Article 18 of the Insurance Law ... is to ensure "that every
> auto accident victim will be compensated for substantially
> all of his economic loss promptly and without regard to
> fault ..." (Report of the Joint Legislative Committee on
> Insurance  Rates,  Regulation and Recodification of the
> Insurance Law, N.Y.Legis.Doc., 1973, No. 18, p. 7). The
> law was enacted to reduce the need for lengthy litigation
> and provide swift compensation without cumbersome
> procedures.

*Johnson, supra,* 418 N.Y.S.2d at 1011-112 (1979); *internal quotation, citation omitted.*

*See also, generally, Montgomery v. Daniels,* 28 N.Y. 2d 41, 378 N.Y.S. 1, 27, 340 N.E.

2d 444 (CANY 1975) (no-fault statute designed to protect victim by assuring prompt and

certain payment of basic economic loss while preserving full traditional common law tort

remedies for more substantial injuries).

<u>New York Interest in Protecting Overburdened Courts</u>

New York's interest in reducing its judicial caseload is obviously not implicated

in the present case, which does not involve its courts.   As explained *in comment c to*

Section 145 of the Restatement:

> Purpose of tort rule. * * * A rule which exempts
> the actor from liability for harmful conduct is entitled to the
> same consideration in the choice-of-law process as is a rule
> which imposes liability. Frequently, however, it will be
> more difficult to discern the purpose of a rule denying
> liability than of a rule which imposes it. Take, for example,
> a statute which abolishes the right of action for alienation
> of affections. *Such a statute may have been designed only
> to spare the local courts from the burden of having to hear
> such actions. If so, the statute should only be applied to bar
> actions brought in the state of its enactment.*

*Id.; emphasis added.*    Thus, to the extent that the objective of the New York no-fault

statute is to "spare the local courts from the burden of having to hear" the great mass of

automobile negligence cases congesting their dockets, the statute should only operate to

"bar actions brought in the state of its enactment."   *Id.*    Not actions brought in

Connecticut.

New York's Interest in Compensating Victims for Medical Expense and Wage Loss

It is anomalous for defendants to suggest, as they do suggest (Memorandum at

p.15), that New York's interest in the prompt, immediate and unconditional payment of

first-party basic loss benefits is somehow advanced by applying New York law to the

present case.  Applying New York law in this unique circumstance would in fact *totally*

*defeat* plaintiffs right to *any* reimbursement for "basic economic loss" that New York

values so greatly.  *Compare:* N.Y. Ins. Law § 5102(b), relating to state uninsured motor

vehicle victim compensation fund: "The legislature determines that it is a matter of grave

concern that those persons are not recompensed for their injury and financial loss

inflicted upon them...."

New York Limitations on Noneconomic Damages

With respect to New York's interest in limiting third party tort recovery for pain

and suffering to persons seriously injured: This, again, is  *a remedial* measure designed to

prevent minor injury cases from flooding the New York courts. In any event, plaintiff

*was,* by the incontrovertible evidence  *substantially injured.*   The undisputed evidence at

trial will be that plaintiff, for the past three years, has been totally unable to engage in

heavy carpentry work due to his permanent spinal injuries, and that he *will never* be able

to return to his pre-accident physical work capacity level.

There is simply no real purpose to be served, however, in requiring plaintiff in

this trial to establish,  *as a procedural precondition to any recovery at all*  for general

damages, strict proof of the New York statutory definition of a "serious" injury. Plaintiff

should simply be awarded pain and suffering damages in a fair and reasonable amount.

No more, no less. There is no need to "muddy the waters" with New York statutory

complexities that go to remedy. Substantial justice would not be served.

Other Connecticut Conflicts Caselaw

*Noble v. Moore, 2002* WL *172665* (Conn.Super. *2002),*[6] concerned two

Connecticut residents, strangers to each other, involved in a two-vehicle New York

collision.   The negligent driver raised the New York affirmative defense of failure to

mitigate damages/failure to wear a seatbelt.     That defense is not recognized in

Connecticut.

In a well-reasoned opinion based upon *O'Connor* and the Restatement, the

Superior Court in *Noble* held that Connecticut law applied.   The Court observed that

while there were certainly substantive, conduct-regulati g elements to New York's

seatbelt/mitigation of damages defense, that rule of law was essentially remedial in

nature. It was not, even in New York, a defense to liability, but rather merely a partial

defense to the damage aspect of the claim. Therefore:

> [S]uch a limitation seems more properly confined to the
> arena of policy decisions about what would be a fair
> compensation scheme, an arena where, given the domicile
> of the plaintiff and defendant in this case, Connecticut's
> interests are more compelling.

*See also: Esposito v. Mele, 2002* WL 31501035 (Conn.Super. *2002)* (Connecticut

passenger on a Connecticut-based bus injured while exiting the vehicle in New York not

subject to New York no-fault limitations).

---

[6] A federal court sitting in diversity should give "proper regard" to "decisions rendered by the lower state courts, when the highest state court has not yet ruled," but "a federal district court is not bound by such Connecticut Superior Court decisions." *Gullotta v. Eli Lilly and Co.* 1985 WL 502793 (D.Conn. 1985), *citing, inter alia, Conn. State Fed, of Teachers v. Rd. ofEduc. Members,* 538 F. 2d 471, 475 (2d Cir. 1976). Nonpublished decisions lack precedential value, but nevertheless represent valid secondary authority to the extent their reasoning is persuasive. E.g., *Blake v. Kline,* 612 F,2d 718, 723 (3d Cir.1979), *cert. denied,* 447 U.S. 921; *Fiat Motors ofN A. v. Mayor and City Council of Wilmington,* 619 F.Supp. 29, 37 (D. Del. 1985). (No local rule appears to prohibit citation of nonpublished decisions.   They are widely cited by Connecticut courts themselves.)

The court in *Noble* also distinguished *Williams v. State Farm Mutual Auto. Ins. Co.*, 229 Conn. 359, 641 A. 2d 783 (1994), in which held that New York law governed an uninsured/underinsured motorist dispute.    There, the *tortfeasor* (although licensed in California) was *a New York resident* driving his *New York-registered vehicle* and *carried New York automobile insurance.*   The plaintiffs uninsured/underinsured motorist policy *contractually obligated* his insurer to pay *only* the damages he would be "legally entitled to collect" from the tortfeasor. That question necessarily hinged upon New York law. Furthermore-- and a critical point of distinction in the present case-- the injury victim in *Williams actually availed herself of New York no-fault benefits.*   The plaintiff sought ¡mmediate medical treatment in New York, made a claim for first-party benefits, and received them. Plaintiff Joseph Bichsel did none of these things.

*Noble* is particularly noteworthy because the parties had no prior relationship *inter se.*   There, as in the present case, the only factor of Section 145 of the Restatement that pointed to the application of Connecticut law was the residency of the parties, but that single factor controlled.    Again, a court should look to the significance of the Restatement factors, not their number.

<u>Basic Policies of Tort Law (Restatement Section 6, Factor (e))</u>

On the most elemental level, tort law exists to deter wrongful conduct and to compensate the victims of such wrongful conduct. E.g., Rest. 2d *Conflicts, §* 145, *cmt. b; DeLoach v. Alfred,* 192 Ariz. 28, 960 P.2d 628, 633 (1998). Application of New York law would simply not accomplish these basic objectives as effectively as Connecticut law.

---

'229 Conn. 368.

<u>Conclusion</u>

Plaintiff Joseph Bichsel was a transient visitor on a short vacation in New York, on his way to La Guardia Airport to return to St. Croix when the accident occurred. Defendant Jillian Wong was on a brief trip from her home in Greenwich to visit her dentist in Scarsdale. The location of this accident was mere incidental "happenstance." *O'Connor, 201* Conn. at 646. To hold otherwise would be to revert to *"lex loci delicti,"* and yield the "harsh, unnecessary and unjust results" of that antiquated doctrine that modern law seeks to avoid. *O'Connor, 201* Conn. at 642. Connecticut law should apply.

No unfairness to defendants would result. "A defendant cannot reasonably complain when compensatory damages are assessed in accordance with the law of his domicile and plaintiff[] receive[s] no more than [he] would have had [he] been injured at home." *Reich, supra,* 432 P.2d at 731.

RESPECTFULLY SUBMITTED this l day of November, 2004.

Edward L. Barry, *pro hoc vice;* CT24618
Hamm & Barry
5030 Anchor Way, Gallows Bay
Christiansted, St. Croix, V. I. 00820
Tel. 340.773/6955; Fax 340.773.3092
elb@hammbarrylaw.com
      -and-
William J. Kupinse, Jr., CT06113
Daren R. Altieri
Goldstein and Peck, P.C.
P.O. Box 1538
Bridgeport, Connecticut 06601
Tel. (203) 334-9421; Fax (203) 334-6949
KupinseW a, goldsteinandpeck.com

By: _____

Certificate of Service

A copy of the foregoing was mailed this  25  day of November, 2004, to Robert
G. Oliver, Esq. and Francis J. Drumm, Ill, Esq., Mulvey, Oliver, Gould & Crotta, 83
Trumbull Street, New Haven, CT 06511; courtesy copy b acsimile (203) 789-8371.