THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| JOSEPH P. BICHSEL | : | CIVIL ACTION NO.: 03-CV-0288 (WWE) |
| Plaintiff, | : | |
| | : | |
| v. | : | NOVEMBER 22, 2004 |
| | : | |
| JILLIAN WONG and | : | |
| ALEX WONG | : | |
| Defendants. | : | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR JUDGMENT AS A MATTER OF LAW**

The Court is applying New York substantive law in this case (over plaintiff's continuing objection), but that ruling is of course is a "given." Defendants have moved the Court for judgment as a matter of law, citing the requirements of New York No-Fault Law's threshold "serious injury" requirement.

Plaintiff believes that he has established, by the overwhelming preponderance of the evidence, that he has sustained profoundly life-altering injuries as a proximate result of defendant Jillian Wong's negligence, and that these injuries are established by competent, objective medical evidence.

**The Standard**

The standard for judgment as a matter of law under Fed. R. Civ. P. Rule 50 carefully preserves the right of the jury to decide all but the most conclusive cases.

Judgment as a matter of law may not properly be granted under

> Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor. In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of the evidence; rather, it must defer to the credibility assessments that may have been made by the jury and the reasonable factual inferences that may have been drawn by the jury. Thus, judgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it]. [*Citations, internal quotations omitted*.]

*Williams v. County of Westchester*, 171 F.3d 98 (2d Cir. 1999).

By the *uncontroverted* evidence, Plaintiff Joseph P. Bichsel cannot work independently as a carpenter in any capacity remotely resembling his pre-accident work level. He cannot lift heavy objects, he cannot stand for extended periods of time, he must restrict any bending maneuvers, he cannot extend or reach for heavy objects with his left arm. If he "overdoes it," his back or his shoulder will not merely become painful and go into spasm to the extent that he is flat on his back in pain, they will both "go out," i.e., cease functioning. Two specific post-accident incidents have been attested to, by way of illustration only: One, where he fell to his knees from merely attempting to change a pool light; and two, when he tried to wrestle a shotgun away from a *120 pound man*. His "back went out" and he further injured his already-torn labrum (shoulder). This is to be contrasted with a man who routinely worked as a hands-on carpenter, and never delegated heavy work. A man who testified that

he lifted and carried fifty one hundred-pound bags of concrete.

These disabilities, by the uncontroverted medical testimony, stem from spinal disc problems clearly demonstrated by MRI: herniation at C6-7 (Dr. Caesar) and herniated disc L5-S1 (Dr. Cintron, relying upon radiology reports of MRI study). These radiologic imaging studies demonstrate definitive pathology in both the cervical and lumbar areas. The clinical symptomatology, as attested to by Dr. Bishop, Dr. Cintron, Physical Therapist Lori Demarchuk, and Dr. Caesar, included *objective* manifestations of this pathology. These objective clinical findings consisted of muscle spasm in the specifically areas correlating to the disc pathology (objectively tested by clinical palpation), altered gait, tightness of paraspinal musculature, positive straight leg raising test, specific trigger point tenderness, and restriction of range of motion (objectively observed and sometimes numerically quantified).

Dr. Bishop and Dr. Caesar both testified that there was preexisting degenerative disc disease in these areas, but that it was entirely quiescent. It is uncontroverted that plaintiff was, before the accident, totally asymptomatic and fully functional, working 12 hours per day, 6 days a week, doing heavy carpentry labor and performing not only the work of Seaview Construction Company but also building his home with his own two hands. It is uncontroverted that plaintiff can now do none of these things, and never will. It is uncontroverted that plaintiff cannot do any repeated overhead activity due to his shoulder, or indeed "any heavy work." (Caesar.)  He is *permanently restricted* from prolonged standing, prolonged weight bearing in general, repeated bending, heavy lifting and heavy

pulling. (Caesar.). Further, according to the undisputed evidence, plaintiff was essentially homebound for three months, and unable to do any physical work whatsoever during the 180 days after the accident. All physical work was delegated to assistants, and the best plaintiff could do was to occasionally show up for a brief periods on the jobsite, and to write checks. Unquestionably, plaintiff has met the requirements of has proven a substantial and permanent disability the spinal structure and paraspinal musculoskeletal system ("significant limitation of use of a body function or system," Ins. Law § 5102(d)(viii)) stemming from objectively established spinal disc pathology: disc bulges and herniations of the neck and (including a tear of the annulus at L5-S1), all radiologically demonstrated and all, according to the expert testimony, either directly caused by or aggravated to the extent that they became clinically symptomatic by the accident. *Heisler v. MPT New York, Inc.*, 2003 WL 23350126 (W.D.N.Y. 2003) (aggravation of preexisting degenerative disc disease, with objective ROM limitations); *Nasrallah v. Oliveiri Helio de and Artichoke Cab Co.*, 1998 WL 152568 (S.D.N.Y. 1998) ("The fact that Mr. Nasrallah already had degenerative disc disease does not prevent an accident from causing serious injury by aggravating this condition."); *Walsh v. Kings Plaza Replacement Service, Inc.*, 239 A.D.2d 408, 658 N.Y.S.2d 345 (App. Div. 1997) ("The car accident caused Kathleen Walsh to suffer a herniated disc at the L5-S1 level and aggravated her previous injury at the L4-L5 level. The accident caused the S-1 radiculopathy of Sean Walsh, which caused him pain and significantly restricted his movements for over 180 days after the accident.")

Independently, a rotator cuff injury involving a tear of the labrum is sufficient to go to the jury on the "serious injury" issue. *Balanta v. Stanlaine Taxi Corp.*, 763 N.Y.S.2d 840 (N.Y.A.D. 2 Dept. 2003) ("restricted range of motion was supported by objective evidence, an MRI which revealed rotator cuff tendonopathy with a focal tear in the supra spinatus region"; chiropractor's affidavit "further stated that the appellant's injuries were permanent and causally related to the motor vehicle accident")

Moreover, and also unquestionably, plaintiff has adduced overwhelming evidence that he was severely incapacitated for more than the requisite 90 days of the 180 days following the accident, also by the same objectively, medically established injuries. Specifically, and by plaintiff's own testimony, as corroborated by William "Buster" Mayers, plaintiff's usual and customary activities were curtailed to a "great extent"—indeed to the extent that he could not personally perform *any* of the physical demands of his job for the entire 180- day period. This alone suffices to qualify as a threshold injury under Ins. Law § 5102(d)(ix). *D'Avolio v. Dictaphone Corp.*, 822 F.2d 5 (2d Cir. 19987); *Vasquez v Weiss*, 234 AD2d 658, 650 NYS2d 60; *Judd v Walton*, 259 AD2d 1016, 703 NYS2d 845; *Vasquez v Weiss*, 234 AD2d 658, 650 NYS2d 60 (mere fact that plaintiff was able to return to work in some capacity, one month after injured, does not preclude finding of serious injury).

## Federal Law Versus State Law

Under the most stringent application of New York standards, plaintiff should be able to go to the jury on his cause of action. However, in the event the Court were to conclude

that state standards would warrant judgment as a matter of law due to the unique level of judicial scrutiny given to the medical evidence in no-fault cases, plaintiff would argue that the federal standard of Fed. R. Civ. P. Rule 50 would supersede the state standard. "In the occasional case in which there is a measurable difference between the state and federal rules on the sufficiency of the evidence to create a jury issue, principle seems to require that the federal court apply the federal test." 9A Wright & Miller, *Federal Practice and Procedure*, § 2525. "[T]here is a strong federal policy against allowing state rules to disrupt the judge-jury relationship in the federal courts and that this policy outweighs the policy of the Erie doctrine." *Id.*; *internal quotation omitted.*

That is the rule adopted by most Circuits, even though the issue has never been resolved by the Supreme Court, *see Dick v. New York Life Insurance Company*, 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959), and never been resolved by the Second Circuit. *See: Simblest v. Maynard,* 427 F. 2d 1, 4-5 (2d Cir 1970). The majority of Circuits adhere to the principle that in a diversity case, state law, under the *Erie* Doctrine, dictates the substantive elements of a cause of action, but federal law governs the quantum and quality of proof required to establish these elements, as well as the relative functions of the judge and jury in the fact-finding role. 9A Wright & Miller, § 2525.

> A[] ... grave disruption of the federal system would result from the application of state law rules as to the sufficiency of evidence to go to the jury. Indeed, it has been suggested, not without reason, that the Seventh Amendment commands application of federal rather than state law here. Faith in the ability of a jury, selected from a cross-section of the community,

> to choose wisely among competing rational inferences in the resolution of factual questions lies at the heart of the federal judicial system. That faith requires consistency within the system and does not permit the accommodation of more restrictive state laws.
>
> As in *Byrd*, the rule as to the sufficiency of the evidence is not bound up with the primary rights and obligations of the parties. In a diversity case, state law defining and limiting those primary rights and obligations must be applied under the *Erie* doctrine, enabling members of society prudently to plan and conduct their affairs, whether their conduct will later be called into question in a state or a federal court. A choice of a rule as to the quantum of proof necessary to support the submission of a case to a jury plays no role in the ordering of the affairs of anyone. It is not the kind of rule which must inexorably find its governance in a diversity case in the corpus of state law. Indeed, unless one accepts the "outcome-determinative" test as both inflexible and universal, there is little in this situation to support the choice of the state rule as opposed to the federal.

*Id., quoting Wratchford v. S. J. Groves & Sons Co.*, 405 F.2d 1061, 1065- 1066 (4th Cir. 1969) (Haynsworth, C. J.)

## **Conclusion**

For the foregoing reasons and those advanced at oral argument, Defendants' Motion for Judgment as a Matter of Law must be denied.

RESPECTFULLY SUBMITTED this 22nd day of November, 2004.

THE PLAINTIFF,
JOSEPH P. BICHSEL by

_____
Warren F. Sasso, Jr.
Fed. Bar No.: CT-18128
Goldstein and Peck, P.C.
1087 Broad Street
P.O. Box 1538
Bridgeport, CT 06601
Tel: (203)334-9421
Fax: (203)334-6949


_____
Edward L. Barry, *pro hac vice*
CT-24618
Hamm & Barry
5030 Anchor Way, Gallows Bay
Christiansted, St. Croix, V. I.  00820
Tel. 340.773/6955
Fax 340.773.3092
elb@hammbarrylw.com

## **CERTIFICATION**

This is to certify that the foregoing was hand delivered on this 22th day of November 2004, to:

Robert G. Oliver, Esq.
Francis J. Drumm, III, Esq.
Mulvey, Oliver, Gould & Crotta
83 Trumbull Street
New Haven, Connecticut 06511

_____
Warren F. Sasso, Jr.